Okay, our next case is Cherry versus Dometic Court, Ms. Bruckner. Thank you, Justice Pryor and may it please the court. Everyone keeps calling me, giving me a promotion, you know. Judge, this happened yesterday. We serve on an inferior court, you know, that's what the Constitution says and I tried. I tried to keep that in mind. There we go. I'm already I'm already off on the wrong foot. Marcus and I got the promotion yesterday too so yeah, don't take it away from us. Well, I'll speak for myself, Ms. Bruckner, and I am acutely aware of my status on an inferior federal tribunal. Do not be concerned at all. May it please the court. Leslie Bruckner for the plaintiffs. This is a class action involving dangerous and defective refrigerators that have twice been the subject of nationwide recalls because they have a tendency to corrode and burst into flames. The district court's refusal to certify the class on ascertainability grounds should be reversed for two independent reasons. First, the district court erred when it applied the ascertainability standards set forth in the unpublished decision in Carhu versus Vital Pharmaceuticals, which requires a threshold showing at class certification that class members can be identified in an administratively feasible fashion. That was error in our view that standard is contrary to rule 23 and contrary to prior rulings. It seems to me that it's got to be pretty clear from our president, and that ascertainability itself is just part of ensuring that you have a class definition. The real rub here is the requirement of a showing of administrative feasibility, and when I look to the text of the rule, I really don't see it, but I do see reflected. It's not that administrative feasibility isn't an issue, but it's not a 23A prerequisite. Is that your argument? Yes, Your Honor. That's exactly our argument, and that's consistent with what the Seventh Circuit held in Mullins and what the Ninth Circuit held in Briseno. Both of those courts recognized that in the rare case where there are difficulties, manageability problems associated with identification of class members, and that would likely be the rare case, those concerns can be and should be considered as part of the Rule 23 superiority analysis, which includes manageability. And that's important because that requirement, of course, includes a balancing test, and the balancing test is you have to consider both the benefits of class actions and the costs. The problem is if you look at it in the prerequisite context, in this kind of abstract sense, you could always say that it doesn't meet some kind of standard of perfection, but the real question is, with something like that, is you need to get to the next level and ask, well, compared to what? Exactly, Your Honor. Exactly, Your Honor. And it's precisely that rationale that has led every court of appeals to consider the question since the Third Circuit issued its decision in Carrera to reject the Carrera heightened ascertainability standard. And in fact, the Third Circuit itself has substantially stepped back from the heightened standard set forth in Carrera. That's the Byrd case, which we cite in our brief, and also City Select. So even the Third Circuit doesn't employ a draconian standard that requires absolute proof of administratively feasible identifiability of class members as a threshold requirement. To get back to what Judge Pryor said at the beginning, yes, absolutely. In the rare case where there are identifiability issues that raise serious manageability problems, they should be considered within the rubric of the superiority requirement. Let me probe that just a little bit further. In an appropriate case, a district court could consider whether it is feasible to ascertain the identity of the class members on the front end of determining certification. You're not disputing that a judge couldn't do that. If I understand your position, it simply has to be done under the rubric of B3 superiority, which requires balancing rather than taking that as a factor separate from distinct from the analysis. But it could be done in an appropriate case at the front end. For example, if the class is defined as all members of the peace movement, we could all agree that that could be determined up front under the rubric of superiority and manageability, even though there's no separate label for feasibility or something like that. So that can be done up front in an appropriate case, right? I disagree with you slightly, Your Honor. In our view, it is appropriate for a court to consider right up front and not as part of the superiority requirement, but as part of the ascertainability inquiry as to whether the class is defined in sufficiently clear and objective terms. That is a threshold requirement. And the reason for that is you have to know the definition of the class in some certain sense to be able to evaluate commonality, typicality, those 23A requirements. Is that the point? Yes, Your Honor. So to be clear, our view of ascertainability is that it is appropriate to consider ascertainability as a threshold requirement for class certification separate and apart from the Rule 23B3 balancing analysis, but that that inquiry, that threshold inquiry, should only be about the class definition. That's consistent with the way all the other circuits approach the issue, and it's consistent with the way this circuit, as I understand it, applied the ascertainability analysis prior to Carhu. Now, I agree with you wholeheartedly, Judge Marcus, that as to questions of whether – so the second part of what Carhu considered ascertainability is whether or not class members can be identified in an administratively feasible fashion. And where Carhu went wrong is with that second part. That second part, in our view, should not be part of the threshold ascertainability requirement. It's only a requirement that can be considered as part of the Rule 23B3 balancing test. I accept that. Help me. Now, you could go with the Ninth Circuit in Briseno, which held that because Rule 23 doesn't even say anything about ascertainability, that even issues as to the class definition do not need to be addressed up front. That is a more extreme approach. Bear with me. Yes. There is no doubt that the class identified is specific. It's those folks who purchased a particular refrigerator with a particular name, number, and identification during a fixed period of time. Yes, Your Honor, that is the class definition in this case, and it is undoubtedly objectively defined and meets all the requirements for traditional ascertainability. I understand that. If I were sitting in the trial court, I would ask you, though, whether I can easily identify who those members are. It's a different question than the first one, but what is the answer to that? On this record, what did you tell the trial judge about the ability to discern who is a member of this class, even though the class is defined with precision and objectively? Yes, Your Honor. First, to be clear, I agree with you that the district court certainly had discretion to ask us to explain why this class can be identified in a feasible manner. Absolutely. But its analysis of that issue needed to be conducted under Rule 23b-3. So that's the general legal framework in which that inquiry—and what we told the court was, and we backed this up with documentary evidence, which the district court failed to understand. We pointed to the court to the fact that Dometic has twice successively conducted nationwide recalls with regard to many of the models at issue in this case. And during those recalls, Dometic was able to utilize its own records, records of its original equipment manufacturers, warranty records, and other records, records of an entity called R.L. Polk that actually maintains a complete list of all VIN numbers for all RVs. And using all these different tools, Dometic was not only able to notify all potential owners of these vehicles, but it obtained this astonishingly high response rate of nearly 50 percent. There were 1.5 million people out there with these— Judge Roberts, do you have any other questions?  Yes. Thank you, Your Honor. Do you have any other questions? I just wanted her to finish the answer with the second piece of documentary evidence that— Okay. —they pointed the district court to. Okay. Thank you. Thank you, Judge Jordan. I wanted to point out that—so the district court erroneously believed that we merely asserted these things, and we did not provide any sufficient documentary evidence to support it. And I would— And what's the second? Beg your pardon? What's the second? The second piece of— What was the other evidence that you pointed the district court to about ascertainability? Yes. So we pointed to, in our reply brief in support of our motion for class certification at page 5, we cited to a number of exhibits, one of which is document 114, which describes in detail the actual process that Dometic used to identify and notify class members during the notification procedures. Unfortunately, I cannot quote to you from that document because it's under seal, but it is in the record. 114, exhibit to our reply. Okay. Also, exhibit 95 is a description of—it's a notice that Dometic sent to its original equipment manufacturers—excuse me, I just dropped my notes—where it stated that Dometic had advised NHTSA, the National Highway Traffic Safety Administration, that the information that it has in its possession and will obtain from its original equipment manufacturers will enable Dometic to assure notification of all effective owners. That's exhibit 95. All right. We cited a number of other exhibits.  Thank you. Thank you, Ms. Rettner. You've saved some time for rebuttal. Ms. Rettner. Ms. Rettner, you're muted, so you need to unmute yourself. Good morning, Your Honor. May it please the court, Erica Rettner on behalf of Dometic Corporation. As Your Honor has just heard from Ms. Bruckner, plaintiffs are asking this court to cast aside the requirement that there be an administratively feasible method for ascertaining the identity of class members. I don't read the argument that way. It doesn't seem to me that your adversary is saying that it should be cast aside. It's just requiring it to be part of a 23A analysis is the wrong place. And to the extent that administrative feasibility comes into play, it comes into play as part of the B3 analysis of superiority. That seems right to me. Well, so she's asking this court to find that the requirement of administrative feasibility not be part of the ascertainability analysis, not be a prerequisite to class certification, but instead be part of the superiority analysis. Right. But not only is she wrong on the merits, even if the court wanted to revisit Kaur Nguyen and all these other decisions that have applied the standards set forth in Kaur Nguyen. I don't have to revisit it. I'm published. This case is not the appropriate vehicle for doing so, and there are at least three reasons for that, Judge Pryor. First, plaintiffs never raise this issue with the lower court. That is the issue of whether ascertainability requires an administratively feasible method for identifying class members. So under black letter law, they have waived their right to raise the issue. It would be forfeit. It would be forfeiture. It seems to me that to the extent that they said, hey, by the way, this is administratively feasible, that doesn't really mean that they were admitting that it is a requirement. I mean, we've got this case now. This is a pretty important issue that keeps coming up. Isn't it the sort of thing that we need to go ahead and decide? Well, your honor, they never raised the issue with the district court about whether ascertainability requires an administratively feasible method for ascertaining class members. They acted as if that was the law and that was the arguments they made to the district court. Look at it from our perspective, though. Should we should we send this back because they didn't raise it and then allow it to go forward on the supposition that this is a requirement only to have an appeal later where we determine that it's not and then start over again? I mean, wouldn't it be far better for us to just determine this once and for all one way or another at this stage? No, again, your honor, because this is not the case to do it because they waived the issue. So they are forfeited from being able to say this isn't the case to do it. But let's say the litigation continues and we get a final judgment, we get an appeal from that. The issue could be could be could be decided at that point. And and we would be we would have to confront it. And if we if we decided against you, then we undo everything that has been done in the meantime. Well, I don't believe they would be able to raise this again because they did not raise it with the district court. So it is waived and they never raised it with the district court. They cannot raise it now. They cannot raise it after trial. They're they're prohibited from raising it and they did not invoke any of the waiver exceptions in their motion. So let me let me turn you then to the evidence before the district court. It seems very odd to me that a manufacturer which has twice initiated recalls. Significant ones with a fair amount of return replies from its customers. Is claiming that ascertain ability for purposes of a class action can satisfy rule 23, whether under 23 or 23 B. I mean, you've you've got you've got Dometic's own sales records. You've got VIN numbers. You've got Dometic's other manufacturers. You've got the people who responded to the recalls. You've got the notices issued pursuant to the recalls for a threshold rule 23 analysis. Why isn't that enough to go forward? Why are you why should we require absolute and definite and certain proof of ascertain ability? And if we should require that, at what percentage level do we require it that we have to require 75 percent of the class to be ascertained or 50 or 60 or 80? What's the number? So I'll respond to both of your questions. Jordan, the first about the recall that Dometic conducted in this case and the specific facts of this case. And as the district court rightly concluded, well within its discretion, that rather than demonstrate that the that class members can be feasibly identified, the recall process proved just the opposite. There is a highly attenuated distribution chain between Dometic who makes refrigerators and the ultimate consumer who buys an RV with one of those refrigerators. And as Dometic learned during the recall process, it itself has no records capable of identifying the consumers who purchased the end product. All it has is the records capable of identifying the RV manufacturers to whom it sold its product. But it learned during the recalls that the RV manufacturers do not maintain records identifying which refrigerator is installed in which RV. So they had to engage in a highly overbroad process that involves sending more than double the amount of notices than affected refrigerators because they had no way to actually identify who had an effect. Let me ask you a question about that based on this record. There are only so many manufacturers who make RVs that have put Dometic refrigerators in those RVs. Couldn't you ask the manufacturer of the RV to tell us which of their RVs were built with a Dometic refrigerator? Wouldn't the manufacturer know? So actually, in fact, what we learned, what Dometic learned during the recall process is they do not know. The manufacturer does not maintain records identifying this particular refrigerator with this particular sale or your number was installed in this particular RV. And that's why Dometic had to know. Let me stop you for a moment. So what you're saying is all the manufacturer could say is we sold 10,000 of these vehicles during this timeframe. All of them had refrigerators. We don't know which ones had Dometic and which don't. That's exactly correct. Let's assume that that's true. Then the next step would be to get the names of all of the purchasers of the RVs with refrigerators and inquire of them whether they're members of the putative class. Check off a box. Does your RV have a Dometic refrigerator with such and such number? Is that a particularly onerous task? Well, in this context of the case and the way in which the class is defined, it is incredibly onerous, if not impossible. And I would just start by turning back to what we're talking about, the district court, the standard of abuse of discretion. The plaintiffs didn't present any of these records. They didn't subpoena any OEMs. They never explained anything to the district court about how any of this could be done. And they didn't because it can't be done. The plaintiffs had defined their class to include both present and former owners of their refrigerators, only certain models of their refrigerators, and refrigerators that were purchased in only one of nine states. So the serial number, for instance, something they never raised anywhere in their motion for class certification, wouldn't tell you whether somebody was a former car owner and a former owner would have no way to identify the serial number. All a present owner would have to do would be to walk into his Harvey, take a look at that little box, see whether it says Dometic, and what the number is. Isn't that right? No, that's not right, because the class here is defined to include only purchasers from nine states. And the serial number would not indicate whether a particular refrigerator was purchased in that state. In fact, so Dometic sells the refrigerators. Wouldn't the manufacturer know at least who he sold his RVs to even if he didn't know whether it contained a Dometic or not, and where the RV was purchased. Correct, but there would be no way to isolate nine states easily enough. There would be no way to match up the serial number with a purchase in a particular state, particularly because you can have aftermarket purchases that you can buy an RV in one state, and then replace the refrigerator and buy that refrigerator in another state, which often happens. Let me go back more basically and ask this question, which we've talked about. Carhu talks about administrative feasibility. I have read Rule 23 10,000 times in my life. I have never found the phrase administrative feasibility in 23A or 23B. I do not dispute that the ability to identify the class is relevant, but isn't it clear as Judge Prior put it to you that that analysis properly conducted under superiority in B3? No, we do not believe that that's the case. I think it's paramount first to start with the fact that even though the words ascertainability do not appear in Rule 23, there is no question as the 11th Circuit has stated time and time again in multiple published decisions, such as Little v. T-Mobile, that the requirement that a class be clearly ascertainable is an implicit requirement within Rule 23. That's a different question. Whether it's ascertainable, that is, whether you can define it in the sense that you have to determine commonality, typicality, those sorts of things, that's one thing. As I understood Judge Marcus's question, though, administrative feasibility, to the extent that there are concerns about that, they come into play in the superiority analysis. Isn't that right? No. In fact, as the court in Carhu rightly concluded, what we're talking about here is what does it mean for a class to be clearly ascertainable? Right? Look at the plain language of ascertainable. It means that the capable of being determined. So we have to have a way of capably determining who the members of the class are. And what that means, it has to be not just objective, but also a feasible way to determine whether somebody is a member of the class. And there's a distinction, counsel, between whether it is ascertainable and how time-consuming and expensive it is to determine its ascertainability. That's feasibility. That's a pragmatic question that asks how hard would it be to determine who falls into this group? But that is a distinct question, it seems to me, from ascertainability. And the problem that I have is the court in an unpublished opinion in Carhu perseverated over administrative feasibility. And I don't find that as a prefatory requirement anywhere. It's implicitly woven into ascertainability, which all seems to me to fall under the heading of superiority. And the district court is surely free to ask these questions under superiority. But I don't understand how he can use administrative feasibility as a prefatory standalone requirement, almost as if 23A said, you've got to show one, commonality. Two, you've got to show numerosity, commonality, typicality, and adequacy. It doesn't say, and five, you have to show administrative feasibility. So in order to get to that question, it seems to me you've got to go through two other steps. You've got to first ask about ascertainability. And then it seems to me all of that probably falls under superiority. Maybe I've misread this. And maybe I've misunderstood this. But why would I glom onto 23A, the additional requirement of administrative feasibility, rather than using the text, which had been very, very carefully crafted and recrafted by the drafters of the rule, and consider it implicitly within my superiority analysis? Isn't that the proper way to do this? No, Your Honor. That is not the proper way to do this. Because again, we don't have a number five requirement that the class be clearly ascertainable. So we know that Rule 23 contains— No, no, no, no, no. We didn't even say that. You're turning your hat on administratively feasible. And you're saying that there is a requirement on the front end of establishing to a reasonably high degree of confidence administrative feasibility as a standalone requirement. And I'm asking you to tell me where it says I have to do that. Well, again, we know it's implicit in the rule that the class has to be clearly ascertainable. And that method must also be efficient and economical, because we know that the Supreme Court has stated time and time again that efficiency and economy of litigation is a principal purpose of Rule 23. Doesn't it make a lot more sense to talk about efficiency and economy when you get to the B analysis and you're asking compared to what? So I think Carhu rightly addressed and explained why that argument is not correct. And that is that administrative feasibility is far from just being about the manageability component of superiority. As Carhu explains, the manageability concerns of superiority are simply those that a court might face after class members have already been identified, whereas ascertainability addresses whether class members can be identified at all. So in other words, ascertainability asks, do you have a way to determine who you are even managing in the first place? Whereas manageability asks, what are the likely difficulties of managing those people when balanced against the other factors of Rule 23? Those are two totally different questions. And that's why, as Carhu put it, the concerns that are at the heart of the ascertainability requirement are, in fact, prior to and hence more fundamental than the manageability concerns of superiority. Judge Marcus, do you have any other questions? No, sir. Thank you. Judge Jordan, do you have any? No, thank you. Ms. Rutner, I think we understand your argument and thank you very much. Ms. Rutner, you've got five minutes. Sometimes you have to make a determination of whether you're far enough ahead to where you can only hurt yourself. Ms. Rutner, I mean, Ms. Rutner, I apologize, you're on mute. In an effort to quit while it seems that I'm ahead, I will make my remarks very, very brief to say that all of my learned friends' concerns can and should be considered by the district court as part of the superiority inquiry. I would note that I think it's important to be clear that this court has held that where a class action is the only way for class members to obtain justice, manageability will rarely, if ever, be itself sufficient to prevent certification of a class if common issues predominate. And as your Honor held in Williams v. Mohawk, manageability is ordinarily satisfied so long as common issues predominate. So I think it's important to clarify that although these issues should be considered as part of manageability, that those general precepts governing manageability should nonetheless continue to govern. I would also just say in conclusion that we did not waive this issue. We raised Briseno, which is the Ninth Circuit's ascertainability ruling, in our reply brief. And even if we had, this court has discretion to hear it because it presents a significant question of public concern. As particularly evidenced by the cases that we cited in our recent Rule 28J letter to the court, which shows in vivid detail how CARHOO is being applied in a way that rules out class actions that Rule 23 was designed to permit. Thank you. If there are no further questions, that concludes my remarks. Thank you. We have your case and we're going to move to the last one for the morning.